UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Kristopher W. Berry,

               Plaintiff,

vs.

Warden Willie Eagleton, Nurse Brown,
Lt. Brayboy, Michelle Fox, and Lt. Martin,
all sued in their individual and official
capacities,

               Defendants.

Civil Action No.: 2:13-02379-RMG-WWD

**REPORT AND RECOMMENDATION**

On September 3, 2013, Plaintiff Kristopher W. Berry, a former inmate at Evans Correctional Institute ("ECI"), filed this action pursuant to 42 U.S.C. § 1983 against the warden of ECI and several current or former ECI employees. Plaintiff is proceeding *pro se* and *in forma pauperis* and asserts (1) violations of the Prison Rape Elimination Act, and (2) violations of SCDC policies. The undersigned also construes Plaintiff's complaint to allege violations of his constitutional rights as well. The case was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) D.S.C.

## BACKGROUND

Plaintiff alleges that on August 8, 2012, he was "sexually assaulted in the upstairs shower of the F3 dorm." Compl. ¶ 5, ECF No. 1. Although Plaintiff confided to his sister that he had been assaulted he did not report the assault "out of fear of losing his Prison Industries job, being dangerously labeled a 'snitch,' and the humiliation of such a demasculizing [sic] act." *Id.* at ¶ 9. Indeed, Plaintiff claims that he affirmatively sought to conceal the assault, instructing his wife not to visit him so that he would not

have to be stripped searched, which he feared would reveal "a massive deep bruise over his left kidney," which was allegedly inflicted during the sexual assault. *Id.* at ¶ 7. Plaintiff's assailant was never identified.

Despite Plaintiff's efforts to conceal the assault, on August 13, 2012, Sergeant Gaddy and Lieutenant Miles escorted Plaintiff to "medical," where "Nurse Brown" informed him that they had information indicating he may have been sexually assaulted, which Plaintiff claims he neither confirmed nor denied. *Id.* at ¶¶ 11-12. Plaintiff was then examined by Defendant Brown, who allegedly told an individual named "Captain Wittington" as well as Lieutenant Miles and Sergeant Gaddy that there was "nothing to see." *Id.* at ¶¶ 13-19. Plaintiff claims that Defendant Brown failed to conduct a thorough examination, which would have noted the large bruise over his kidney. *Id.* at ¶ 20. Plaintiff alleges that Defendant Brown's failure to perform an adequate examination and failure to record the examination results violated PREA and subsequently led Plaintiff to be accused of lying. *Id.* at ¶ 21-22

Plaintiff alleges that he declined protective custody when asked and signed a form stating he was refusing the same. *Id.* at ¶ 24. Nevertheless, Plaintiff was placed in a holding cell from August 13-15. Plaintiff claims that during this time, two other inmates who were suspected of fighting were put into the cell with him. *Id.* at ¶ 26. He maintains that if he was truly being held in protective custody, he should not have been detained with other inmates, which he alleges is a violation of SCDC policy. *Id.* at ¶ 27. Plaintiff asserts that on the evening of August 15, Defendant Brayboy told Plaintiff that he was being locked up for lying. *Id.* at ¶ 28. An official named "Sergeant Pervis" joined Defendant Brayboy at Plaintiff's cell, and Plaintiff claims that he then admitted to both

officers that he had been sexually assaulted on the night of August 8, 2012, and showed the officers the "now fading" bruise over his kidney. *Id.* at ¶ 31. Defendant Brayboy allegedly laughed and said, "you suppose[d] to be a Marine and you let yourself get fucked?" *Id.* Plaintiff claims that, as far as he knows, no incident report was filed by Sergeant Pervis or Defendant Brayboy in violation of PREA. *Id.* at ¶¶ 32-33.

Plaintiff alleges that he was then taken to the Special Management Unit ("SMU") and told that he could see Defendant Michelle Fox with "Mental Health" the following day. *Id.* at ¶ 34. Plaintiff was placed into a cell with another inmate, and the following day, was moved into another cell with yet another inmate named, "Justin Castenellos," who was known to be violent and racist, all in violation of SCDC policy. *Id.* at ¶¶ 35-39. According to Plaintiff, Castenellos beat his subsequent roommate so severely that he required hospitalization. Plaintiff contends that he spent the next 47 days with Castenellos fearing for his life and refusing to sleep unless Castenellos was himself asleep. *Id.* at ¶ 41. Plaintiff contends that because of his fear of Castenellos, he was forced to sleep on the top bunk, despite having knee surgery and being "unable to defend himself." *Id.* at ¶¶ 54-55.

In addition to being housed with Castenellos, Plaintiff complains of a number of other acts or omissions, which he alleges violate SCDC policy, PREA, or his constitutional rights. These allegations can be summarized as follows:

A. That he was not initially allowed to see Defendant Fox in Mental Health, *id.* at ¶ 42, that Defendant Fox sent a message that said that she would not see him unless he was going to hurt himself, *id.* at ¶ 43, that he ultimately saw Defendant Fox only 3 times for a total of less than an hour, *id.* at ¶ 56;

B. That he received word from his sister, Heather Soto, that he had been fired from his prison industries job on August 16, 2012, *id.* at ¶ 49, that although he filed a

grievance and met with the Warden several times to discuss getting his job back, he was never given a definitive answer by the warden and never got his job back, *id.* at ¶¶ 66-67

C.  That he never signed or refused to sign a pre-hearing detention form in violation of SCDC policy and his Fourteenth Amendment right to due process, *id.* at ¶¶ 50-51

D.  That Defendant Martin denied him timely access to his lawyer and members of his family, *id.* at ¶¶ 52-53

E.  That his sister, Heather Soto, was given false information about his case, *id.* at ¶ 58

F.  That Warden Eagleton "inferred" that he would not release Plaintiff from the SMU unless Plaintiff refused medical and mental health services for the sexual assault, *id.* at ¶ 62;

G.  That his requests for infectious disease tests were only granted toward the end of his incarceration, *id.* at ¶ 57;

H.  That an individual named "Mr. Maddox" attempted to return Plaintiff to the same dorm in which he had been assaulted, *id.* at ¶ 64;

I.  That he was ultimately allowed to resume his position on the Inmate Representative Committee "placing him around his attacker potentially," *id.* at ¶ 68;

J.  That mail that his sister, Heather Soto, sent to him to enable him to pursue the instant action was improperly categorized as "questionable," *id.* at ¶¶ 76-80;

K.  That the warden responded to some of his grievances in an untimely manner, *id.* at ¶ 81;

L.  That the delivery of certain medicine that he was prescribed for treatment of PTSD was delayed in order to retaliate against him for his claims, *id.* at ¶¶ 82-86;

M.  That he was not allowed to accrue "good time" during the 50 days he spent at the SMU, *id.* at ¶ 90;

N.  That while at the SMU, Plaintiff observed two inmates placed in a crisis intervention cell together naked, *id.* at ¶ 91

O.  That prison officials waited almost 2 full months after his attack to initiate an investigation, *id.* at ¶ 69, that the investigator assigned to investigate the assault

on Plaintiff never interviewed his former cell mate, *id.* at ¶ 70, that other inmates from Plaintiff's former dorm indicated that they were not interviewed regarding the assault on Plaintiff, *id.* at ¶ 71, that Plaintiff has not been able to locate anyone who the investigator questioned regarding Plaintiff's assault, *id.* at ¶ 72, that the meetings Plaintiff had with Defendant Eagleton "were very one sided" and that the warden seemed to be trying to get Plaintiff "to say that the sexual assault never happened."; and

P.   That another inmate suffered a similar sexual assault committed by an inmate matching the description of Plaintiff's attacker, and the victimized inmate was "threatened, harassed, and ignored" by ECI staff members in violation of PREA, *id.* at ¶¶ 93-95.

Plaintiff seeks (1) "compensatory relief" for the loss of his Prison Industries job, (2) compensatory relief "for the fear of life, mental anguish, and suffering" he experienced as a result of being placed in the SMU with a "racist" and "violent" detainee, (3) nominal damages for the violation of his "State and Federal Rights," (4) a declaration that Evans Correctional Institute and SCDC must follow federal law and the Constitution and that they no longer be afforded "broad discretion" in their implementation and application of these authorities, (5) an injunction prohibiting Plaintiff from being transferred from ECI without just cause, (6) "protection" from direct and indirect retaliation from Defendants in response to his lawsuit, (7) costs and fees associated with filing this action, (8) punitive damages in an amount to be determined by the Court, and (9) any other relief the Court deems appropriate.

Defendants filed an answer (ECF No. 15) on November 25, 2013, and, on December 18, 2013, Plaintiff filed a "response" to the Defendants' answer and a motion for summary judgment (ECF No. 18). Defendants responded in opposition (ECF No. 20), arguing that Plaintiff had not provided facts that would entitle him to summary judgment. Defendants filed a motion for summary judgment on March 6, 2014 (ECF No.

5

29). Plaintiff responded in opposition on April 2, 2014, (ECF No. 32) and Defendants replied on April 11, 2014, (ECF No. 33). In addition, Plaintiff filed the Affidavit of Heather Soto on April 23, 2014, (ECF No. 34),[1] and a sur reply on May 19, 2014, (ECF. No. 35).

In their motion for summary judgment, Defendants argue that (1) Defendants Martin and Brown were not properly served, (2) Plaintiff has failed to exhaust his administrative remedies, (3) Defendants are entitled to qualified immunity, (4) to the extent that Defendants are sued in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983, (5) Plaintiff does not have a constitutionally protected liberty interest in his security classification or prison placement, (6) the allegations that Defendants failed to follow SCDC policy do not rise to the level of a constitutional violation, (7) Plaintiff's PREA claims are not actionable under § 1983, (8) Plaintiff fails to state a valid claim for deliberate indifference to medical needs, (9) Plaintiff's retaliation claims do not rise to the level of a constitutional violation, (10) Defendant Eagleton cannot be held liable under *respondeat superior*, (11) Plaintiff has not presented a valid claim that Defendant Eagleton was constitutionally deficient in his supervisory duties, (12) Plaintiff has not shown any evidence of physical injury arising out of his claims against the Defendants, (13) Plaintiff cannot recover for the alleged loss of earned credits, (14) the Court should decline supplemental jurisdiction over any state law claims it determines Plaintiff has raised, (15) Plaintiff is not entitled to injunctive relief, and (16) Plaintiff's claims are factually and legally frivolous and should be dismissed and count as a strike under the PLRA.

---

[1] Ms. Soto is Plaintiff's sister and her affidavit chronicles her efforts to assist her brother with his claims.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985).

## DISCUSSION

### INSUFFICIENT SERVICE

Defendants argue that Defendants Martin and Brown were not properly served. Plaintiff appears to concede the point and does not object to dismissal of the claims against Defendants Martin and Brown, provided that the dismissal is without prejudice. Accordingly, the undersigned recommends that the claims against Defendants Martin and Brown be dismissed without prejudice for insufficient service.

### FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants contend that Plaintiff's claims are barred because he failed to exhaust his administrative remedies.[2] In support of their claim, Defendants submitted the Affidavit of Ann Hallman, who is the Grievance Branch Chief for SCDC. *See* ECF No. 29-2, at ¶ 1. Branch Chief Hallman attests that Plaintiff filed twelve grievances regarding the issues raised in this case. Of these grievances, five were withdrawn by Plaintiff and never refiled, five were returned unprocessed and never refiled, one was pending at the time of Plaintiff's release, and one was responded to by the warden and accepted by the Defendant. *See id.* at ¶¶ 3-7. In response, Plaintiff maintains that he did exhaust his administrative remedies, that some of the warden's responses to his grievances were untimely, and that one of his appeals was never answered. Defendants did not respond to Plaintiff's arguments in their reply and did not submit copies of the grievances to the Court. Thus, the undersigned cannot conclude from the record that

---

[2] The Prison Litigation Reform Act ("PLRA") generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

the Plaintiff failed to exhaust his administrative remedies and cannot recommend that Plaintiff's claims be dismissed on this ground.

## DEFENDANTS MAY NOT BE SUED IN THEIR OFFICIAL CAPACITY UNDER § 1983

The undersigned agrees with Defendants that, to the extent that Plaintiff is suing Defendants in their official capacity, his claims must be dismissed. Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). As the Supreme Court has held, neither a State nor its officials acting in their official capacities are "persons" under § 1983" *Id.* Accordingly, to the extent that the Plaintiff seeks to recover from the Defendants acting in their official capacities under § 1983, his claims should be dismissed.

## QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." *Slattery,* 939 F.2d at 216 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Accordingly, ruling on a defense of qualified immunity

requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir.2000). Furthermore, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir.1998); *see also Young v. City of Mount Rainier,* 238 F.3d 567, 577-78 (4th Cir.2001) (concluding that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity). As discussed below, the undersigned finds that the Plaintiff has not shown a violation of any constitutional right, clearly established or otherwise.

**PLAINTIFF'S PLACEMENT IN THE SMU AND LOSS OF JOB AND OPPORTUNITY TO EARN GOOD TIME**

Prison officials must often weigh competing imperatives, and Federal courts are required to accord great consideration to a correctional system's need to maintain order, discipline, and control. *Wolff v. McDonell,* 418 U.S. 539, 558–562, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). There is no constitutional right for a state or federal prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. *See Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Ange v. Paderick,* 521 F.2d 1066 (4th Cir.1975), Thus, the placement and assignment of inmates into particular institutions or units by state or federal corrections departments are discretionary functions, and are not subject to review unless state or federal law places limitations on official discretion. *Hayes v. Thompson,* 726 F.2d 1015, 1016–1017 & n. 1 (4th Cir.1984) (collecting cases).

It is well settled that the placement of inmates into administrative segregation units is a valid means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick,* 760 F. Supp. 524, 528 (D.Md.1991). *See also Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."); *Anderson v. County of Kern,* 45 F.3d 1310, 1316 (9th Cir.1995) (prison officials have legitimate penological interest in administrative segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"), *rehearing denied,* 75 F.3d 448 (9th Cir.1995), *cert. denied, County of Kern v. Anderson,* 516 U.S. 916, 116 S.Ct. 306, 133

11

L.Ed.2d 210 (1995); and *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"). Federal courts are not "to assume the role of super wardens of state penal institutions." *Cooper v. Riddle,* 540 F.2d 731, 732 (4th Cir.1976).

Plaintiff has neither alleged facts nor forecasted evidence sufficient to establish a violation of his constitutional rights. Indeed, Plaintiff's factual allegations paint an ironic, if not contradictory picture. He faults Defendants for failing to discover an injury, which he admittedly sought to conceal for at least five days. He blames prison officials for failing to complete a report when he finally admitted that he had been assaulted, even though prison officials took the initiative to bring Plaintiff in for a medical exam after learning that he may have been assaulted. He complains that he was allowed to return to his Inmate Representative Committee position, which potentially placed him around his attacker, but he then bemoans the fact that he was placed in the SMU against his will and was not allowed to return to his job, both of which were also intended to keep him away from his attacker. He criticizes the speed of the prison investigation, while detailing the steps he took to ensure that prison officials and certain members of his family would not discover that he had been assaulted.

Plaintiff's claims essentially amount to disagreement with the judgment of prison officials. He has not alleged that the actions of prison officials led to his assault. He has not alleged that he was subsequently sexually assaulted or beaten after being placed in the SMU, despite the allegedly violent and racist nature of his cellmate. He has not

alleged a single cognizable harm that is inconsistent with protective detention. It is true that an inmate who is placed in administrative segregation or assigned to the SMU may lose certain opportunities and have their regular routine disrupted. Plaintiff has admitted that he was not forthcoming to prison officials regarding his assault, however, and given the uncertainty surrounding Plaintiff's claims, prison officials cannot be faulted for placing him in administrative detention.

In addition, Plaintiff's claims that he lost the opportunity to work and to earn good time because he was placed in the SMU do not entitle him to recover damages against Defendants. "The opportunity to earn good time credits is not a constitutionally established liberty interest." *Holmes v. Cooper,* 872 F. Supp. 298, 302 (W.D.Va.1995) (citing *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); *see also Gaskins v. Johnson,* 443 F. Supp. 2d 800, 805 (E.D.Va.2006) ("[P]risoners have no liberty interest in obtaining or retaining a specific prison classification level to allow them to obtain an early release."); *Delaney v. Ozmint,* No. 4:05–1968–HFF–TER, 2006 WL 1878982, at *8 (D.S.C. July 5, 2006) ("Plaintiff cannot show that he has a protected interest in earning good-time or work credits."); *Harris v. Murray,* 761 F. Supp. 409 (E.D.Va.1990) ("[T]here is no constitutional right to an institutional job or, in fact, to rehabilitation at all."). Accordingly, Plaintiff has not shown that his placement in the SMU and the resulting loss of his job and the opportunity to earn good time violated any of his constitutional rights.

## RETALIATION

To pursue a claim for retaliation, "Plaintiff must allege facts showing [that] his exercise of a constitutionally protected right was a substantial factor motivating the

retaliatory action." *Plummer v. Riley*, 2:12-CV-3412-TLW-BHH, 2014 WL 1277903 (D.S.C. Feb. 26, 2014) *report and recommendation adopted in relevant part,* 2:12-CV-03412-TLW, 2014 WL 1277897 (D.S.C. Mar. 27, 2014). Claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir.1996); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir.1994). Here, it does not appear that prison officials were responding to misconduct committed *by* Plaintiff, but there is naturally a direct and logical relationship between Plaintiff's allegations that he was raped and the decision by prison officials to place him in the SMU for his own protection. This relationship does not, without more, establish retaliation. Plaintiff is adamant that his placement in the SMU could not have been for his own protection because he was placed in a cell with an allegedly violent and racist inmate. Plaintiff has not, however, alleged that he was ever attacked or harmed by this inmate, and the fact that he was afraid of the inmate or that the inmate failed to give him the bottom bunk is not a cognizable harm for which Plaintiff can recover. Likewise, the fact that Plaintiff disagrees with the steps that prison officials allegedly took to protect him does not override their discretion or demonstrate that their actions were retaliatory.

Plaintiff's allegations that he was denied a medication he requested in retaliation for reporting his assault, filing grievances, or filing this lawsuit are similarly insufficient to survive summary judgment. Defendants have submitted multiple affidavits explaining that the delivery of Plaintiff's medications was delayed because the medication he requested was not on the SCDC formulary and required special review and approval.

*See* Eagleton Aff. ¶ 9, ECF No. 29-3; Fox Aff. ¶¶ 5-6, ECF No. 29-5; Smith Aff. ¶ 4, ECF No. 29-6. Plaintiff has not offered any facts to undermine the explanation provided in these affidavits or to show that his attempt to exercise a constitutionally protected right was "a substantial factor" motivating the alleged delay in his receiving the medication/supplement he requested. Plaintiff's other allegations of retaliation are similarly insufficient to survive a motion for summary judgment.

### CLAIMS FOR VIOLATIONS OF PREA AND SCDC POLICY

Plaintiff alleges numerous violations of PREA; however, "there is no basis in law for a private cause of action under § 1983 to enforce a PREA violation." *De'lonta v. Clarke*, 7:11-CV-00483, 2013 WL 209489 (W.D. Va. Jan. 14, 2013); *see also Ball v. Beckworth*, CV 11-00037-H-DWM, 2011 WL 4375806 (D. Mont. Aug. 31, 2011) *report and recommendation adopted,* CV 11-37-H-DWM-RKS, 2011 WL 4382074 (D. Mont. Sept. 19, 2011) ("PREA provides for the reporting of incidents of rape in prison, the allocation of grants, and it created a study commission. It does not give rise to a private cause of action."(citation omitted)); *Chinnici v. Edwards*, 1:07-CV-229, 2008 WL 3851294 (D. Vt. Aug. 12, 2008) ("PREA confers no private right of action."). In addition, violations of SCDC policies do not support an action under § 1983 unless they are also a violation of the inmate's constitutional rights. *See Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (observing that § 1983 "does not provide any relief against prison rules violations"); *Johnson v. S.C. Dep't of Corr.*, 3:06-2062-CMC-JRM, 2007 WL 904826 (D.S.C. Mar. 21, 2007) ("the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation.").

Accordingly, to the extent that Plaintiff seeks to recover from the Defendants for violations of PREA or SCDC policies, his claims must be dismissed.

## MEDICAL INDIFFERENCE CLAIMS

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Deliberate indifference is a very high standard. The Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness"; "mere negligence or malpractice does not violate the Eighth Amendment." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990) *overruled in part on other grounds by Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not

16

prevail. *Estelle,* 429 U.S. 104; *Farmer,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811; *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F. Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987)).

Furthermore, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle,* 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair,* 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir.2010) (internal quotation marks and citation omitted); *see also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir.1985).

There are not sufficient facts alleged in the complaint to show that the Defendants demonstrated deliberate indifference to the Plaintiff's serious medical needs. The Complaint alleges, at most, mere negligence or delay in treatment; however, Plaintiff has not offered medical evidence that the Defendants' conduct resulted in any injury to the Plaintiff. *See Coleman v. Poff*, 497 F. App'x 337, 338 (4th Cir. 2012) ("To establish that an inmate has suffered cruel and unusual punishment based on his conditions of confinement, he must "produce evidence of a serious or

significant physical or emotional injury resulting from the challenged conditions," (internal quotation marks and citation omitted)). Consequently, to the extent Plaintiff advances a claim for medical indifference, Defendants are entitled to summary judgment.[3]

## RESPONDEAT SUPERIOR

In his response to Defendants' motion for summary judgment, Plaintiff denies that he is seeking to recover against Defendant Eagleton on the theory of *Respondeat Superior*. *See* ECF No. 32, at 9 ("Since the Plaintiff has brought suit against each defendant for their own involvement and violations of PREA, SCDC policies and constitutional rights of the plaintiff, the theory of *Respondeat Superior* is not argued."). Since Plaintiff has made it clear that he is not pursuing damages against Defendant Eagleton on the theory of *Respondeat Superior*, the undersigned declines to address the Defendants' arguments in this regard.

## PLAINTIFF'S CLAIMS SHOULD NOT COUNT AS A STRIKE PURSUANT TO THE PLRA

Although the undersigned agrees with Defendants that summary judgment should be granted on Plaintiff's claims, the undersigned would not go so far as to categorize all of Plaintiff's claims as "frivolous." *See McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are so nutty, delusional, or wholly fanciful as to be simply unbelievable." (internal quotation marks and citations omitted)). Since not all of Plaintiff's claims can be dismissed as "frivolous," this dismissal should not count as a strike. *See Tolbert v. Stevenson*, 635 F.3d 646, 651 (4th Cir. 2011) ("Therefore, § 1915(g) requires that a

---

[3] Consistent with the foregoing analysis of Plaintiff's claims, the undersigned recommends that Plaintiff's request for injunctive relief be denied.

prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike.").

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' motion for summary judgment (ECF No. 27) be GRANTED and Plaintiff's claims against Defendants Martin and Brown be dismissed without prejudice and Plaintiff's claims against Defendants Eagleton, Brayboy, and Fox be DISMISSED with prejudice. It is further RECOMMENDED that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED and that Plaintiff's state law claims, of whatever kind, against the Defendants be DISMISSED without prejudice.

IT IS SO RECOMMENDED.

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 16, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).